[S. F. No. 8912. In Bank.—September 24, 1919.]

SOUTHERN PACIFIC COMPANY (a Corporation), Respondent, v. FRIEND W. RICHARDSON, Treasurer, etc., Appellant.

[S. F. No. 8913. In Bank.—September 24, 1919.]

SOUTHERN PACIFIC COMPANY (a Corporation), Respondent, v. FRIEND W. RICHARDSON, Treasurer, etc., Appellant.

[S. F. No. 8914. In Bank.—September 24, 1919.]

SOUTHERN PACIFIC COMPANY (a Corporation), Respondent, v. FRIEND W. RICHARDSON, Treasurer, etc., Appellant.

[1] TAXATION—FERRY SYSTEM OF RAILROAD COMPANY—OPERATION AS SEPARATE BUSINESS—GROSS RECEIPTS NOT TAXABLE FOR STATE PURPOSES.—The state board of equalization has no authority under section 14 of article XIII of the constitution to levy taxes upon

the gross receipts of a railroad corporation from the operation of a ferry entirely separate and distinct from its railroad system and having no connection therewith.

[2] CONSTITUTIONAL LAW—TAXATION OF GROSS RECEIPTS OF RAILROAD COMPANIES—KINDS OF PROPERTY.—The fact that subdivision (a) of section 14 of article XIII of the constitution, which declares the duty to pay the taxes provided for in the opening paragraph, begins with the phrase "all railroad companies," and, in describing the kinds of property to be so taxed, closes with the phrase, "and other property, or any part thereof, used exclusively in the operation of their business in this state," is not to be taken as meaning that persons or corporations carrying on any business of a kind mentioned in the opening paragraph must be taxed in the same manner and for state purposes exclusively, upon property which they may have and use exclusively in the operation of a separate public utility business in this state which otherwise would not be so taxable, but the only reasonable interpretation is, that the phrase refers only to the kinds of business which are declared to be so taxable in the opening paragraph, and includes only the property which is used exclusively in the operation of such business.

APPEALS from judgments of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge. Affirmed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Appellant.

Henley C. Booth for Respondent.

SHAW, J.—In each of these cases the defendant appeals from a judgment in favor of the plaintiff. Each case is an action to recover taxes paid to the state under protest for a single fiscal year ending on June 30th. Case No. 8912 was for $21,415.26, paid for the year ending in 1916; case No. 8913 for $23,507.98, paid for the year ending in 1917, and case No. 8914 for $25,920.31, paid for the year ending in 1918.

These taxes were levied by the state board of equalization, under the assumed authority of section 14, article XIII, of the constitution. The sole question for determination is whether or not the state board was correct in the position that the plaintiff was liable, under this section, for the taxes upon

the gross receipts from operation of the particular property upon which these several amounts were assessed.¹ The Southern Pacific Company, as is well known, operates an extensive system of railways within the state. As adjuncts thereto at its Oakland and Alameda rail terminals it operates a number of ferry-boats connecting with its railway lines to carry its freight and passengers between said terminals and the city of San Francisco, in order to complete the carriage from its different lines of railway to that city.

In addition to these railroad lines and connecting ferry lines, it operates a system of ferry-boats between San Francisco and Oakland known as the ''Creek Route.'' These boats carry passengers and freight from a slip on the San Francisco side to a point in the estuary between Oakland and Alameda near the foot of Broadway, in the city of Oakland. They do not connect with any railroad line of the plaintiff nor with any other railroad line. So far as its business is concerned it could as conveniently be operated by any other company, since it has no connection whatever with the railroad system operated by the plaintiff. An account of the receipts from this business is kept separate and distinct from the receipts from railroad lines and other ferry-boats above mentioned belonging to the plaintiff. They are paid into the general treasury of the plaintiff and are used by it for any purpose it sees fit. Under the direction of the state board, the plaintiff reported thereto for the year ending 1916 that its gross receipts from the operation of the said Creek Route during said fiscal year amounted to $407,909.82. Said report also included other sums as the gross receipts from the railroad lines and other ferry-boats above mentioned. The state board computed the sum of five and one quarter per cent upon said sum as the amount of taxes to be assessed against said plaintiff on account of the gross receipts from said Creek Route, which sum the plaintiff thereupon paid under protest. A similar process took place with respect to the other cases. The decision of the case depends upon the interpretation to be given to the language of section 14, above referred to. The contention on behalf of the state is that it authorizes an assessment of the fixed percentage upon the gross receipts from operation of the plaintiff company upon every kind of business which it carries on, whether a railroad business or of some other character not necessary for its

railroad business, nor connected therewith. The plaintiff, on the other hand, insists that the section authorizes such tax only upon its railroad property, and the necessary or convenient adjuncts thereto. In order to clearly exhibit the question, we quote the parts of the section which relate thereto, as follows:

"Sec. 14.   Taxes levied, assessed and collected as hereinafter provided upon railroads, including street railways, whether operated in one or more counties; sleeping car, dining car, drawing-room car and palace car companies, refrigerator, oil, stock, fruit, and other car-loaning and other car companies operating upon railroads in this state; companies doing express business on any railroad, steamboat, vessel or stage line in this state; telegraph companies; telephone companies; companies engaged in the transmission or sale of gas or electricity; insurance companies; banks, banking associations, savings and loan societies, and trust companies; and taxes upon all franchises of every kind and nature, shall be entirely and exclusively for state purposes, and shall be levied, assessed and collected in the manner hereinafter provided.   The word 'companies' as used in this section shall include persons, partnerships, joint-stock associations, companies, and corporations.

"(a) All railroad companies, including street railways, whether operated in one or more counties; all sleeping car, dining car, drawing-room car, and palace car companies, all refrigerator, oil, stock, fruit and other car-loaning and other car companies, operating upon the railroads in this state; all companies doing express business on any railroad, steamboat, vessel or stage line, in this state; all telegraph and telephone companies; and all companies engaged in the transmission or sale of gas or electricity shall annually pay to the state a tax upon their franchises, roadways, roadbeds, rails, rolling stock, poles, wires, pipes, canals, conduits, rights of way and other property, or any part thereof, used exclusively in the operation of their business in this state, computed as follows: Said tax shall be equal to the percentages hereinafter fixed upon the gross receipts from operation of such companies and each thereof within this state.''

The theory advanced on behalf of the state is, in effect, that if any railroad company or person, operating a railroad within this state, should engage in the business of operating

another and separate public utility within the state, not of a character taxable exclusively or at all for state purposes under section 14, and not necessary or convenient for the operation of its or his railroad, nor in any manner connected therewith as an adjunct thereto, the gross receipts from the operation of such separate public utility must be included with the gross receipts from the operation of the railroad system and connections, and the fixed percentage computed upon the whole sum. [1] If this is correct, it would necessarily follow that the property used exclusively in operating such separate public utility would be exempt from local taxation for municipal or county purposes. The interpretation contended for would enlarge section 14 by bringing such separate public service business within its scope, in all such cases, although it is not of a class mentioned therein. It would do more. Section 1 of article XIII of the constitution provides that all property in the state shall be taxed in proportion to its value, except as otherwise provided in the article. The property of the separate public utility would not be within the exception and it would, under section 1, be subject to local taxation for municipal and county purposes, whereas, under the interpretation claimed for the state, it would be excluded therefrom. This would not only be putting into section 14 a provision not contained in it, and inserting in section 1 an exception not there contained, but it would also be establishing a peculiar and unreasonable discrimination with respect to public utilities or kinds of business of a class not declared to be taxable for state purposes.

To make the proposition ·clear, if further exposition is necessary, we may take the very case here presented. Ferries are not mentioned in section 14; therefore, the property used in the operation of a ferry is not taxable exclusively or at all for state purposes under that section, but is subject to local taxation in proportion to value, under section 1.· It will be conceded that all ferries not operated by a railroad company which is also operating a railroad are thus subject to local taxation. Local taxation of all such ferries is authorized by section 3643 of the Political Code, and if they connect more than one county, the stationary property shall be taxed in the county in which it is situated and the intangible property and water craft assessed in equal proportions in the respective counties. But under this claim the mere fact that

the Creek Route ferry happens to be operated by the Southern Pacific Company, which is also operating a railroad within the state, would cause the property of this particular ferry to be excluded from taxation for local purposes in the city and county of San Francisco, the county of Alameda, and the city of Oakland, and make it taxable exclusively for state purposes under section 14, while all other ferries operating between said counties not owned by a railroad company or operating in connection with a railroad would be taxed only for local purposes. Also, it would follow that if the Creek Route ferry should hereafter become the property of some other corporation which was not operating a railroad, its property would again become subject to local taxation. Such uncertain and unusual results were clearly not within the contemplation of the framers of section 14 of article XIII of the constitution.

[2] The appellant argues that since subdivision (a) of section 14, which declares the duty to pay the taxes provided for in the opening paragraph, begins with the phrase, "all railroad companies," and, in describing the kinds of property to be so taxed, closes with the phrase, "and other property, or any part thereof, used exclusively in the operation of their business in this state," it must follow that persons or corporations carrying on any business of a kind mentioned in the opening paragraph must be taxed in the same manner, and for state purposes exclusively, upon property which they may have and use exclusively in the operation of a separate public utility business in this state which otherwise would not be so taxable. If the meaning of the phrase "their business in this state" is to be enlarged so as to include any business other than the kinds made taxable by the first paragraph of the section, it could as well be said to include any kind of business carried on by such person or company, such, for example, as a farm, or a dry-goods store. This would be absurd and the appellant does not so contend. The argument is not sound. The entire context implies the contrary. The only reasonable interpretation is that the phrase refers only to the kinds of business which are declared to be so taxable in the opening paragraph and includes only the property which is used exclusively in the operation of such business. It was so held, in effect, by this court in *Lake Tahoe etc. Co.* v. *Roberts,* 168 Cal. 551, [Ann. Cas. 1916E, 1196, 143

Pac. 786]. We do not mean to suggest that ferry-boats and the necessary adjuncts used only to connect separate parts of the railroad line, such as those at Port Costa, or those used only to connect its rail lines with its terminals at San Francisco, are not to be taxed for state purposes only as provided in section 14.

It is ordered that the judgment in each of the above-entitled cases be affirmed.

Olney, J., Melvin, J., Wilbur, J., Lawlor, J., Lennon, J., and Angellotti, C. J., concurred.